IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

JOHN B. DUNZER,                          )
                                         )
            Plaintiff,                   )    TC-MD 140256N
                                         )
      v.                                 )
                                         )
CLATSOP COUNTY ASSESSOR,                 )
                                         )
            Defendant.                   )    **FINAL DECISION**

The court entered its Decision in the above-entitled matter on September 5, 2014.

Defendant timely filed a Statement for Costs and Disbursements on September 9, 2014. As of

the date of this Final Decision, Plaintiff has not filed an objection to Defendant's Statement for

Costs and Disbursements. This matter is now ready for the court's Final Decision. The court's

Final Decision incorporates its Decision without change and includes the court's analysis and

determination of Defendant's statement for costs and disbursements in section III.

Plaintiff appeals the real market value of property identified as Account 14127 (subject

property) for the 2013-14 tax year. A trial was held in the Oregon Tax Courtroom on July 29,

2014, in Salem, Oregon. John B. Dunzer appeared and testified on his own behalf. Michael

Grant appeared and testified on behalf of Defendant. Plaintiff's Exhibits 1 through 3 were

received without objection. Defendant's Exhibits A through R, including its corrected Exhibit H,

and its Rebuttal Exhibits AA, BB, CC, EE, FF, GG, HH, and II were received without objection.

At the beginning of trial, Plaintiff stated that the Clatsop County Board of Property Tax

Appeals (BOPTA) did not consider the evidence that he presented because Plaintiff's appeal of

the subject property for the 2012-13 tax year was pending in the Regular Division of this court.

Plaintiff verbally requested that the court remand this case to BOPTA. Plaintiff did not cite any

authority in support of his request and the court is not aware of any such authority. Plaintiff's verbal request that this matter be remanded to BOPTA is denied.

## I. STATEMENT OF FACTS

Plaintiff testified that he did not obtain an appraisal of the subject property because an appraiser would not be able to inspect the interior of each property used as a comparable sale. He testified that he believes Defendant's appraisers have superior information to other appraisers because they have the authority to inspect the interior of each comparable sale.[1] (*See also* Ptf's Ex 1 at 2.) Plaintiff testified that, as a result, he did not obtain an appraisal and relied instead on the information contained in Grant's appraisal.

Grant testified that Defendant's appraisers have inspected the subject property "[a]t least" three times since 2008. (Def's Ex A at 1.) Grant and another appraiser "re-inspected the subject property" on April 10, 2014, and "verified all of the measurements of the whole property." (*See id.*) Grant provided a description of the subject property based on his inspection. (*Id.*) The subject property is a single-family residence located in Seaside, Oregon. (*Id.*) The site is a triangular, 0.23-acre lot "at the end of a cul-de-sac one block away from the beach" that "backs up to a very large parcel of land zoned F-80—forest land." (*Id.*) The house was built in 1994 and has been remodeled since that time. (*Id.*) It includes 3,767 square feet of finished space comprised of 1,274 square feet on the first floor; 1,608 square feet on the second floor, of which 420 square feet is over the garage "with direct access from the house"; 813 square feet of "finished attic"; and 72 square feet "for elevator roof top housing." (*Id.*) The subject property includes a 696 square foot "attached finished garage[,]" "an elevator with [four] stops, [a] built in vacuum system, [a] jet tub, [a] large covered porch, [and] wood decks." (*Id.* at 1-2.)

_____

[1] Grant testified he lacks the authority to inspect the interior of each comparable sale; he may request an interior inspection, but he has no authority to compel an inspection.

Based on the description in the Department of Revenue's 2005 Cost Factor Book (Cost Factor Book), Grant concluded the subject property's "exterior is clearly a class 5 or better home and the interior is in better than average condition and * * * is a class 6+ * * * therefore [he] * * * corrected the overall class from a 5 to a 5+." (Def's Ex A at 1, 5.) Grant found "the detailed woodwork, higher end hardwood floor, detailed molding around all doors and windows, pocket doors, multiple built ins (including in the finished attic), higher end carpet (plush), wainscoting, wallpapering, fireplace detail, partial tin ceiling, and overall interior finishes" were indicative of a class 5+ house. (Def's Ex A at 5; *cf*. Def's Ex C.) Plaintiff testified that he disagreed with Grant's determination that the subject property is a class 5+ house, and noted that Defendant previously concluded the subject property was a class 5 house. Plaintiff testified the area above the subject property's garage is an attic, not living space as Grant described it. Grant testified the subject property's attic is finished, but not to the same degree as the rest of the house. He testified the attic has sloping ceilings and is not heated.

A.    *Subject property listing*

Plaintiff testified that he listed the subject property for sale for $799,000 on March 23, 2012. (*See also* Def's Ex O at 2.) Plaintiff testified that he selected that listing price because he has over $600,000 in liens on the subject property. He testified that he thinks the subject property used to be worth over $600,000, but not as of January 1, 2013. The subject property listing stated that it has "[s]tunning whitewater views from all three stories [and] top deck." (Def's Rebuttal Ex EE at 1.) Plaintiff testified he agrees that the subject property has "stunning whitewater views," but does not think the views have any impact on value because they are not from the main floor. Plaintiff testified the bankruptcy court reduced the subject property's listing price to $725,000 on November 13, 2012. (*See also* Def's Ex O at 2.) He testified that on

August 19, 2013, potential buyers made an all-cash offer of $425,000 to purchase the subject property as-is, but the bankruptcy court rejected that offer. (*Cf.* Def's Rebuttal Ex FF.)

B.      *Plaintiff's real market value evidence*

Plaintiff testified that he was previously a licensed broker and contractor in California, but no longer held those licenses as of the date of trial in this matter. He testified that he is not a licensed appraiser in Oregon.

Plaintiff testified that he used a methodology that combined the sales comparison approach and the cost approach; he "modified" the cost approach with the sales comparison approach. (*See* Ptf's Ex 1 at 1-2.) Plaintiff testified he first identified properties located in the same area of Seaside as the subject property that sold within three months of January 1, 2013. (*See id.* at 2-3.) He testified that he found two comparable sales that met those criteria. (*See id.* at 3.) Plaintiff testified that he used Defendant's records to determine a cost value of the subject property and his two comparable sales. (*See* Ptf's Ex 2.) Defendant's records included inventories of "improvement components," "garage components," and "other improvements," as well as a cost value calculation based on those inventories. (Ptf's Ex 2 at 8-9, 14-16.) Plaintiff made adjustments to Defendant's costs and reached his own cost conclusions for the subject property and the two comparable sales. (*See id.*) Plaintiff testified that he determined the ratio of sale price to total cost for each of his two comparable sales. (*See* Ptf's Ex 1 at 7.) He then multiplied the average of those two ratios, 73 percent, by his cost conclusion of $526,396 for the subject property and determined the subject property's real market value was $384,269. (*Id.*)

Grant questioned Plaintiff's adjustments to the county's reported unit costs and demonstrated errors in Plaintiff's adjustments. (*See*, *e.g.*, Def's Rebuttal Ex DD (explaining the

/ / /

proper calculation of "the heating-cooling adjustment factors").) Grant also questioned Plaintiff's development of a ratio using only two data points.

C.      *Defendant's real market value evidence*

Grant testified that he completed an appraisal considering all three approaches of value, but used only the cost and sales comparison approaches. (*See* Def's Ex A at 3.) He testified that he concluded a real market value of $548,335 under the cost approach and $555,000 under the sales comparison approach. (*Id.* at 9.)

1.      *Cost approach*

Grant determined a total real market value of $548,335 under the cost approach. (Def's Ex A at 3.) He concluded a value of $143,181 for the land based on comparable land sales. (*Id.*; Def's Ex E.) Grant determined a value for $451,425 for the improvements using the Cost Factor Book and subtracted depreciation of $46,271 based on the "2011 Clatsop County depreciation Study adjusted to 2013 values." (Def's Ex A at 3; Exs F-G.) Plaintiff testified that he generally agreed with Grant's cost approach conclusion and noted that he concluded the subject property's total cost, including land, was $526,396. (*See* Ptf's Ex 1 at 7.)

2.      *Sales comparison approach*

Grant testified that he identified four sales of properties in 2012 and 2013 that were of "a similar age and class" as the subject property and located within a few blocks of the subject property. (*See* Def's Ex A at 3.) The lot sizes of Grant's comparable sales ranged from 0.18 to 0.25 acre. (*Id.* at 4.) Two of the sales "had some ocean views" and the others lacked ocean views "but did back up to the forest similar to the Subject property." (*Id.*) Grant considered the subject property's ocean views to be superior to all of the comparables based on "the finished attic and rooftop deck." (*Id.*)

Grant testified that he made adjustments for differences between the subject property and his comparable sales. (*See* Def's Ex A at 4-7; Ex H.) He testified that he made "moderate" view adjustments based on a county study. In his appraisal report, Grant determined most of his adjustments based on the Cost Factor Book, including a $37,000 upward adjustment for property class to each of his comparable sales except sale 3, which he found to be class 5+. (*See* Def's Ex A at 5-7.) For purposes of calculating size adjustments in his appraisal report, Grant treated the living area over the subject property's garage "as part of the house itself" because it is accessible from the interior of the house. (*Id.* at 6.) In his appraisal report, Grant made the following additional adjustments. He adjusted for bathrooms, fireplaces, and other interior features and made a $2.00 per square foot adjustment for cost to cure the subject property's inadequate attic and second floor heating. (*Id.* at 6-7.) Grant made upward adjustments of approximately $26,000 to $27,000 to each of his comparable sales because none had an elevator. (Def's Ex H.) Grant testified that the market in Seaside did not change from 2012 to 2014, so no time adjustments were required within that period.[2] (*See* Def's Ex A at 3; Def's Rebuttal Ex II (Clatsop County's 2014 Assessor Certified Ratio Study).)

In his appraisal report, Grant's sale 1 was a 1,950-square-foot house located adjacent to the subject property that sold for $400,000 on October 31, 2012.[3] (Def's Ex A at 7; Ex H at 1.) He concluded an adjusted price of $499,704 for sale 1. (*Id.*) Grant's sale 2 was a 2,603-square-foot townhouse that sold for $418,750 on April 5, 2012. (Def's Ex A at 8; Ex H at 1.) He made an upward "common wall" adjustment of $43,500 to sale 2 based on "a sales pair analysis" and

---

[2] The "2014 Time Trend Analysis" states, in part, "[s]ince 2009, values have steadily declined through 2012, and then have somewhat stabilized in 2010-2012 with a slight increase in 2013. * * * In our time trend analysis, the countywide average sale price remained essentially the same for the 2013 year when looking from the point in January to the point in December." (Def's Rebuttal Ex II at 2.)

[3] Grant's sale 1 included additional living space above the garage. (*See* Def's Ex H at 3.)

concluded an adjusted price of $556,216. (Def's Ex A at 5; Ex H at 1.) Grant's sale 3 was a 2,762-square-foot house that sold for $460,000 on December 12, 2013. (Def's Ex H at 2.) He concluded an adjusted sale price of $569,139 for sale 3. (*Id.*) Grant's sale 4 was a 2,562-square-foot house that sold for $475,000 on November 25, 2013. (*Id.*) He concluded an adjusted price of $544,718 for sale 4. (*Id.*) Grant determined a value range of $545,000 to $565,000 under the sales comparison approach and concluded a real market value of $555,000 for the subject property. (Def's Ex A at 9.)

Plaintiff testified that he did not consider any of Grant's sales from August 2013 to February 2014 to be comparable because they occurred too long after the January 1, 2013, assessment date. (*See* Ptf's Ex 1 at 3.) He testified that he disagreed that the subject property was a class 5+ house and, therefore, disagreed with Grant's $37,000 class adjustment. Plaintiff testified that he disagreed with Grant's elevator adjustment, noting that he paid between $22,000 and $23,000 for the elevator. Grant testified that even if he removed the elevator and property class adjustments the subject property's indicated real market value would be about $500,000.

The subject property's 2013-14 tax roll real market value was $562,813 and its maximum assessed value was $464,347. (Ptf's Compl at 2.) Plaintiff requested a 2013-14 real market value of $384,000. (*See* Ptf's Ex 1 at 4.) Grant wrote "[t]he value on the tax roll * * * has been corrected after the last inspection to $555,059" and asks the court to sustain that real market value. (Def's Ex A at 9.) He testified that Plaintiff would have to prove the subject property's 2013-14 real market value was no more than $497,000 in order to receive tax savings through compression. (*Id.* at 10.)

///

///

## II. ANALYSIS

The issue before the court is the real market value of the subject property for the 2013-14 tax year. "Real market value is the standard used throughout the ad valorem statutes except for special assessments." *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted). Real market value is defined in ORS 308.205(1),[4] which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."

The assessment date for the 2013-14 tax year was January 1, 2013. *See* ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue." ORS 308.205(2). The three approaches of value that must be considered are: (1) the cost approach, (2) the sales comparison approach, and (3) the income approach. OAR 150-308.205-(A)(2)(a).[5] Although all three approaches must be considered, all three approaches may not be applicable in a given case. *Id.* In this case, Plaintiff used a "modified" approach that combined the cost and sales comparison approaches. Defendant relied on the cost and sales comparison approaches.

"In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the party seeking affirmative relief * * *." ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2011.

[5] The citation is to an Oregon Administrative Rule (OAR).

evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

A.      *Plaintiff's real market value evidence*

Plaintiff determined that the subject property's real market value as of January 1, 2013, was $384,269 based on his "modified" approach, in which he combined the cost and sales comparison approaches. Plaintiff's modified approach is not one of the three approaches of value described in OAR 150-308.205-(A)(2)(a) and Plaintiff offered no statute or administrative rule that authorizes use of his modified approach. Furthermore, Plaintiff is not an appraiser and cannot, therefore, testify that his modified approach is an accepted appraisal technique. *Cf. Danielson v. Multnomah County Assessor*, TC-MD No 110300D at 7, WL 879285 (Mar 13, 2012). Plaintiff provided no other evidence in support of his requested 2013-14 real market value. The court concludes that Plaintiff failed to carry his burden of proof.

Even though the burden has not shifted under ORS 305.427, "the court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Thus, the court will consider the real market value evidence presented by Defendant.

/ / /

B.      *Defendant's real market value evidence*

Grant determined that the subject property's real market value as of January 1, 2013, was $555,000 based on the cost approach and the sales comparison approach.

1.      *Cost approach*

"In the cost approach, the value of a property is derived by adding the estimated value of the land to the current cost of constructing a reproduction or replacement for the improvements and then subtracting the amount of depreciation * * * in the structure from all causes." *Magno v. Dept. of Rev.*, 19 OTR 51, 55 (2006) (quoting Appraisal Institute, *The Appraisal of Real Estate* 63 (12th ed 2001)).  The cost approach is "particularly useful in valuing new or nearly new improvements," but is "less useful where the evidence of cost is incomplete, distorted, or otherwise unreliable." *Id.*  Grant determined a total real market value of $548,335 under the cost approach.  Plaintiff testified that he generally agreed with Grant's conclusion.  The court accepts Grant's real market value conclusion of $548,335 under the cost approach.

2.      *Sales comparison approach*

The sales comparison approach "may be used to value improved properties, vacant land, or land being considered as though vacant." *Chambers Management v. Lane County Assessor*, TC-MD No 060354D, WL 1068455 at *3 (Apr 3, 2007) (citations omitted).  "The court looks for arm's length sale transactions of property similar in size, quality, age and location" to the subject property. *Richardson*, 2003 WL 21263620 at *3.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used.  All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions. * * *."

OAR 150-308.205-(A)(2)(c).

/ / /

Grant identified four sales that he considered comparable to the subject property and made adjustments to those sales for differences from the subject property. Plaintiff testified that he disagreed with several of Grant's adjustments, in particular his elevator and property class adjustments. However, Plaintiff failed to provide any competent evidence to rebut Grant's adjustments, relying instead on his own criticisms. Although the court received no competent evidence rebutting Grant's analysis under the sales comparison approach, the court questions the comparability of Grant's sales in light of the relatively large net adjustments that Grant made to each of his sales. *See, e.g., VanDerveer v. Wasco County Assessor*, TC-MD 110271N at 11 (Dec 16, 2011) ("extensive adjustments" indicated sales were not comparable to subject property). Thus, the court gives little weight to the sales comparison approach.

3.       *Reconciliation*

Grant determined a real market value of $555,000 under the sales comparison approach, but the court found that approach should be given little weight in this analysis. The court accepted Grant's cost approach conclusion that the subject property's 2013-14 real market value was $548,335. In order for the court to order a change in real market value, Plaintiff must be aggrieved. *See* ORS 305.275(1)(a). To be aggrieved, the change in real market value must result in a property tax reduction. The 2013-14 maximum assessed value of the subject property was $464,347 and Grant testified that Plaintiff would not receive tax savings through compression unless the court reduced the subject property's 2013-14 real market value to $497,000 or less. Although the evidence presented indicates that the subject property's 2013-14 real market value is approximately $548,000, the court cannot order a reduction because Plaintiff is not aggrieved.

/ / /

/ / /

### III. COSTS AND DISBURSEMENTS FACTS AND ANALYSIS

The Magistrate Division has discretionary authority under ORS 305.490(2) to award costs and disbursement to the prevailing party. *Wihtol I v. Dept. of Rev.*, 21 OTR 260, 267-68 (2013). The Magistrate Division has promulgated a rule, Tax Court Rule-Magistrate Division (TCR-MD) 19, that sets forth the procedure for a prevailing party to request costs and disbursements. As required under TCR-MD 19 C(1), Defendant filed a signed and detailed Statement for Costs and Disbursements on September 9, 2014, requesting that the court award it costs totaling $147.15. (Def's Statement at 1.) Defendant attached Exhibit 1 itemizing its requested costs and substantiating those costs. (*Id.* at Ex 1.) Defendant's requested costs include the cost of copying and mailing its original appraisal report and other trial exhibits. (*Id.*) As of the date of this Final Decision, Plaintiff has not filed an objection to Defendant's Statement for Costs and Disbursements.

Under TCR-MD 19 B, "costs and disbursements may be awarded only to the prevailing party." *Wihtol v. Multnomah County Assessor* (*Wihtol*), TC-MD No 120762N, WL 274126 at *2 (Jan 24, 2014). "[P]revailing party" is not defined for purposes of "costs and disbursements," so this court has looked to the definition of "prevailing party" for purposes of making an award of attorney fees under ORS 20.077(2). *Id.* at *2. Under ORS 20.077(2), the prevailing party is "the party who receives a favorable judgment or arbitration award on the claim." "The award of costs and disbursements is entirely discretionary with the court." *Wihtol*, WL 274126 at *4 (citation omitted).

In this matter, the court denied Plaintiff's appeal. Thus, Defendant was the "prevailing party" under TCR-MD 19. Defendant's requested costs totaling $147.15 are reasonable and necessary expenses associated with copying and mailing its trial exhibits, which are recoverable

costs under TCR-MD 19 A. Under those circumstances, the court concludes that Defendant's request for costs and disbursements should be granted.

## IV. CONCLUSION

After careful consideration, the court concludes that Plaintiff failed to prove by a preponderance of the evidence that the subject property's 2013-14 real market value was $384,269. Defendant's evidence under the cost approach supports a 2013-14 real market value of $548,335, but the court cannot order a reduction to that value because Plaintiff is not aggrieved under ORS 305.275(1)(a). Plaintiff's appeal must be denied. Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's verbal request that this matter be remanded to the Clatsop County Board of Property Tax Appeals is denied.

IT IS FURTHER DECIDED that Plaintiff's appeal is denied.

IT IS FURTHER DECIDED that Defendant's request for costs and disbursements is granted. Defendant is awarded costs of $147.15.

Dated this ___ day of September 2014.

ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Final Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Final Decision or this Final Decision cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on September 24, 2014. The court filed and entered this document on September 24, 2014.*